**TA LEGAL GROUP PLLC**
Taimur Alamgir, Esq.
205 E Main Street, Ste 3-2,
Huntington, NY 11743
(914) 552-2669
tim@talegalgroup.com
*Attorneys For Plaintiff Waseme Gamba*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| WASEME GAMBA*,* | |
| Plaintiff, | |
| - against - | **Case No:** |
| | **COMPLAINT** |
| PYRAMID HEALTHCARE INC., | |
| Defendant. | |

1.     This is a civil action brought by Plaintiff, Waseme Gamba, against Defendant, Pyramid Healthcare Inc., for discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, arising from Defendant's unlawful conduct based on Plaintiff's race and national origin, creation of a hostile work environment, and retaliation for Plaintiff's protected complaints of discrimination including Plaintiff's unlawful termination.

2.     Plaintiff is an individual of Black race and national origin, originally from Trinidad and Tobago, who was employed by Defendant as a Counselor and subsequently promoted to Assistant Executive Director, commencing in or about February 2024 and continuing until her termination in December 2024.

3.     Defendant, Pyramid Healthcare Inc., is a corporation organized and existing

1

under the laws of Pennsylvania, with its principal place of business located at 271 Lakemont Park Blvd, Altoona, PA 16602 and has business operations throughout the United States.

4.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law, including Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981.

5.      Plaintiff timely filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and has satisfied all administrative prerequisites to suit, including receipt of a Notice of Right to Sue. *See* Exhibit A.

6.      Plaintiff alleges that, during her employment, Defendant and its agents subjected her to repeated and pervasive acts of discrimination and harassment based on her race and national origin, including derogatory comments about her accent and speech, unfounded criticisms of her professional conduct, and dismissive treatment by supervisors and management personnel.

7.      Plaintiff further alleges that, after she made complaints to management and human resources regarding the discriminatory conduct, Defendant retaliated against her by escalating the hostile work environment, threatening her with unwarranted discipline, demanding she sign a release of claims, and ultimately terminating her employment under pretextual circumstances. Plaintiff further alleges that Defendant continued the retaliation after termination by baselessly opposing an application for unemployment benefits.

8.      Defendant's conduct constitutes unlawful discrimination, retaliation, and maintenance of a hostile work environment in violation of Title VII and 42 U.S.C. § 1981. Plaintiff seeks all available legal and equitable relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees and costs, and such other relief as the

Court deems just and proper.

9.      The following Complaint sets forth the factual allegations and legal claims supporting Plaintiff's entitlement to relief under the laws of the United States.

## PARTIES

10.     Plaintiff, Waseme Gamba, is an individual of Black race and national origin from Trinidad and Tobago, who was employed by Defendant as a Counselor beginning in or about February 2024, and was subsequently promoted to Assistant Executive Director effective April 2024. Plaintiff was based at Defendant's facility located in Altoona, PA until her termination in December 2024 and worked remotely from New York at times during her employment. At all relevant times, Plaintiff was an employee within the meaning of the applicable statutes.

11.     Defendant, Pyramid Healthcare Inc., is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business located at 271 Lakemont Park Blvd, Altoona, PA 16602. Defendant conducts business throughout the United States, including in Pennsylvania and New York, and was Plaintiff's employer at all relevant times.

12.     At all times relevant to this Complaint, Defendant employed Plaintiff and exercised control over the terms and conditions of her employment, including hiring, promotion, supervision, discipline, and termination.

13.     Defendant's agents, supervisors, and management personnel—including but not limited to Rachel Campbell (Plaintiff's direct supervisor), Lindsey Laudermilch (interim Executive Director), Erin Thompkins (Executive Director), Aleisha Albertson (Director of Operations), Kimberlee Matthews (Human Resources Department), and Ria Heresco (management)—acted within the scope of their employment and authority in relation to the events

described herein.

14.    Whenever reference is made to Defendant, such reference includes Defendant's officers, directors, agents, employees, representatives, and all persons acting in concert or participation with them.

15.    Plaintiff reserves the right to amend this section to identify additional parties as discovery may reveal.

## PROCEDURAL REQUIREMENTS

16.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's claims arise under federal law, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and other applicable federal statutes.

17.    At all relevant times, Defendant, Pyramid Healthcare Inc., employed Defendants for purposes of the relevant statutes.

18.    Plaintiff has satisfied all administrative prerequisites to suit, including the timely filing of charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and receipt of a Notice of Right to Sue, thereby conferring jurisdiction upon this Court to adjudicate Plaintiff's federal claims. *See* Exhibit A.

19.    The exercise of jurisdiction and venue by this Court is proper and just under the circumstances alleged herein.

## FACTUAL BACKGROUND

20.    Defendant Pyramid Healthcare Inc. is a corporation headquartered in Altoona, Pennsylvania.

21.    Ms. Gamba is a 32-year-old former employee of Pyramid. Ms. Gamba is black and is originally from Trinidad and Tobago.

22. Ms. Gamba was originally hired in February 2024 as a Counselor.

23. Ms. Gamba was then promoted to Assistant Executive Director, effective April 2024.

24. Even after her promotion, Plaintiff lacked the authority to hire or fire employees and was expressly barred by Defendant from hiring and firing.

25. Ms. Gamba's direct supervisor at Pyramid was Rachel Campbell.

26. Erin Thompkins was subsequently appointed as Executive Director and oversaw Ms. Gamba.

27. Despite her contributions and quality performance that led to her promotion, Pyramid and senior officials of the company, including Ms. Gamba's supervisors, demonstrated animus toward Ms. Gamba due to her race and national origin, when Ms. Gamba complained about the racist and ethnically discriminatory treatment she received, she suffered continuous retaliation and ultimately illegal termination. This animus culminated in discriminatory and retaliatory actions, as detailed below.

28. Starting approximately in May 2024, there were many encounters between Lindsey Laudermilch, the interim Executive Director, and Ms. Gamba during which Ms. Laudermilch made comments reflecting discriminatory animus based on national origin and on the way Ms. Gamba spoke and instructed Ms. Gamba that she needs to alter her speech. Ms. Laudermilch expressed that she could not understand Ms. Gamba and that Ms. Gamba did not speak English properly. This demonstrated racial and national origin discrimination.

29. Around the same time, further reflecting her animus towards Ms. Gamba's race and national origin, Ms. Laudermilch labeled Ms. Gamba as "combative", because Ms. Gamba was black and spoke with an accent.

30. Ms. Laudermilch would frequently mention having a friend from Guyana, implying an understanding of Ms. Gamba's background, which is dismissive and offensive, as Ms. Gamba is from Trinidad and Tobago. This reflects national origin discrimination.

31. In reference to Ms. Gamba's goal to be promoted to Executive Director. Ms. Laudermilch told Ms. Gamba "If that is your goal, then communication and body language will go a long way" Ms. Laudermilch made this comment because of racist animus and because she treated Ms. Gamba derisively, as if she were less intelligent, due to her Trinidadian accent.

32. Ms. Laudermilch frequently used inappropriate language such as "What the f**k" around the office contributing to the unprofessional and hostile environment. This was not meant in jest but specifically to attack Ms. Gamba, whom she continually demeaned and treated as a lackey because she was Black, spoke with a foreign accent, and hailed from Trinidad and Tobago.

33. Ms. Gamba made several complaints to Aleisha Albertson, the Director of Operations, about the discriminatory comments made to her by Ms. Laudermilch, but no intervention occurred. The treatment only escalated after Ms. Gamba made the complaints to Ms. Albertson.

34. On July 9, 2024, Ms. Gamba emailed Kimberlee Matthews, of the HR Department, lodging a formal complaint against Lindsey Ludermilch for discrimination and a hostile work environment. Despite this formal complaint, no action was taken to protect Ms. Gamba from the discriminatory actions.

35. Several staff members reportedly observed these discriminatory acts toward Ms. Gamba and expressed concerns about the workplace environment.

36. On August 13, 2024, in a meeting convened by management officials, such

as Erin Thompkins and Aleisha Albertson, to discuss her complaints of discrimination, Ms. Gamba was belittled and intimidated. Ms. Thompkins berated Ms. Gamba about her accent, and intelligence while in the meeting. This was due to animus toward Ms. Gamba as a black person and as a Trinidadian..

37.     The discrimination and retaliation continued for months, even though Ms. Gamba complained verbally many times in between to the supervisors referenced above.

38.     In early November 2024, due to Ms. Gamba's continued complaints about racial and national origin discrimination, Pyramid threatened to terminate Ms. Gamba's employment and demanded that she agree to a release of potential claims. Ms. Gamba accordingly engaged counsel to represent her.

39.     On November 17, 2024, a cease-and-desist letter was sent to Ms. Matthews by Ms. Gamba's attorney. This letter details some of the allegations of discrimination and hostile work environment Ms. Gamba faced throughout her employment at Pyramid. The letter from Ms. Gamba's attorney further directed those inquiries regarding her complaints of discrimination, retaliation, hostile work environment, and harassment be directed to her counsel rather than to Ms. Gamba.

40.     On December 2, 2024, while at the office, Ms. Gamba was cornered by Ms. Matthews regarding the subject of her claims in direct contravention of the admonitions in Ms. Gamba's counsel's prior letter, and threatened her with unwarranted discipline and suspension, demanding that she sign off on a false disciplinary citation. Ms. Gamba refused to sign the citation and mentioned that her attorney was handling the discrimination and other claims.

41.     On December 6, 2024, Ms. Thompkins invited Ms. Gamba to a meeting called "Erin/Waseme Mediation." The intent of this meeting was to browbeat Ms. Gamba about

the complaints made.

42.    Upon being informed by Ms. Gamba that Pyramid was scheduling the above meeting, Ms. Gamba's attorney reached out to Pyramid's General Counsel, David Pertile, regarding the scheduled meeting with Ms. Gamba and Ms. Thompkins. Mr. Pertile informed Ms. Gamba's attorney that he would inform his subordinates to cancel the meeting.

43.    On December 9, 2024, Ms. Gamba was terminated, shortly following her repeated protected complaints and even though she was represented by an attorney. The reason verbally given to Ms. Gamba was that she failed to attend a meeting the week prior. This was not a valid reason for termination as the meeting in question was to be cancelled. There was no actual absence. Nevertheless, Ms. Gamba was not given an opportunity to contest the reason given.

44.    Ms. Gamba repeatedly said during the termination that this was additional discrimination and retaliation.

45.    Pyramid ignored these complaints and ejected Ms. Gamba from the building.

46.    Later that day, Ria Heresco, a member of management, informed employees that Pyramid fired Ms. Gamba because she "**got lawyers involved**." This is clear-cut retaliation in response to Ms. Gamba's protected discrimination and retaliation complaints.

47.    In late January 2025, Pyramid opposed the provision of unemployment benefits to Ms. Gamba on the fraudulent grounds that she engaged in misconduct and was terminated for this reason. This lie constituted another act of retaliation.

48.    The Pennsylvania Department of Labor & Industry Unemployment Compensation Board of Review rejected Pyramid's false misconduct claim and issued unemployment benefits to Ms. Gamba.

## LEGAL CLAIMS

**COUNT I.    Discrimination under Title VII of the Civil Rights Act of 1964**

49.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

50.    Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits employers from discriminating against employees on the basis of race and national origin.

51.    At all relevant times, Defendant Pyramid Healthcare Inc. ("Defendant") was an employer within the meaning of Title VII, employing more than fifteen (15) employees and engaging in an industry affecting commerce.

52.    Plaintiff, Waseme Gamba, is a Black woman of Trinidadian national origin who was employed by Defendant as a Counselor beginning in or about February 2024, and was promoted to Assistant Executive Director effective April 2024 in recognition of her performance and contributions.

53.    Despite her qualifications and achievements, Plaintiff was subjected to persistent and pervasive discriminatory treatment by supervisory personnel, including but not limited to Lindsey Laudermilch (Interim Executive Director), Rachel Campbell (Direct Supervisor), Erin Thompkins (Executive Director), and other management officials.

54.    The discriminatory conduct included, but was not limited to: a. Repeated derogatory comments about Plaintiff's accent and national origin, including assertions that Plaintiff did not speak English properly and instructions to alter her speech; b. Dismissive references to Plaintiff's Caribbean background, including inappropriate comparisons and offensive remarks; c. Labeling Plaintiff as "combative" in connection with her advocacy for client

9

safety, and belittling her intelligence and communication skills, all motivated by animus toward her race and national origin; d. Frequent use of inappropriate and profane language in Plaintiff's presence, contributing to an unprofessional and hostile work environment; e. Treating Plaintiff as a subordinate and demeaning her in front of colleagues.

55. Plaintiff made multiple complaints to management, including Aleisha Albertson (Director of Operations) and Kimberlee Matthews (HR Department), regarding the discriminatory comments and hostile work environment. Defendant failed to take any meaningful remedial action, and the discriminatory conduct escalated following Plaintiff's reports.

56. On July 9, 2024, Plaintiff lodged a formal written complaint with HR regarding the conduct of Lindsey Laudermilch. No protective measures were implemented, and Plaintiff continued to experience discrimination and retaliation.

57. Plaintiff's complaints were met with intimidation and belittlement by management, including a meeting on August 13, 2024, where Plaintiff was berated about her accent and intelligence by Erin Thompkins and Aleisha Albertson, further evidencing discriminatory animus.

58. Defendant's retaliatory conduct intensified after Plaintiff engaged counsel and continued to assert her rights. In early November 2024, Defendant threatened Plaintiff with termination and demanded she sign a release of potential claims. Plaintiff's attorney sent a cease-and-desist letter to Defendant's HR department on November 17, 2024, detailing the ongoing discrimination and hostile work environment.

59. Despite counsel's involvement, Defendant continued to harass Plaintiff, including a December 2, 2024 incident where Plaintiff was threatened with unwarranted discipline and pressured to sign a false disciplinary citation. Plaintiff refused and reiterated that

her attorney was handling the matter.

60. On December 6, 2024, Defendant scheduled a "mediation" meeting intended to browbeat Plaintiff regarding her complaints. Plaintiff's attorney intervened, and Defendant's General Counsel agreed to cancel the meeting, yet the hostile conduct persisted.

61. On December 9, 2024, Defendant terminated Plaintiff's employment, citing a pretextual reason related to an alleged missed meeting that was, in fact, cancelled. Plaintiff was not afforded an opportunity to contest the stated reason and was ejected from the premises after asserting that her termination was discriminatory and retaliatory.

62. Defendant's retaliatory animus was further evidenced when management informed other employees that Plaintiff was terminated for "getting lawyers involved."

63. Defendant subsequently opposed Plaintiff's application for unemployment benefits on fraudulent grounds, which were rejected by the Pennsylvania Department of Labor & Industry.

64. Defendant's conduct constitutes unlawful discrimination against Plaintiff on the basis of race and national origin, in violation of Title VII.

65. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, reputational harm, and other damages for which Defendant is liable under Title VII.

**COUNT II.  Hostile Work Environment Under Title VII**

66. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

67. Defendant Pyramid Healthcare Inc. ("Defendant"), through its officers, directors, agents, and employees, created and maintained a hostile work environment for Plaintiff,

11

Waseme Gamba, based on her race and national origin, in violation of Title VII of the Civil Rights Act of 1964.

68.    The hostile work environment to which Plaintiff was subjected included, but was not limited to: a. Repeated derogatory comments about Plaintiff's accent and national origin, including assertions that Plaintiff did not speak English properly and instructions to alter her speech; b. Dismissive and offensive references to Plaintiff's Caribbean background, including inappropriate comparisons and remarks that minimized or belittled her heritage; c. Labeling Plaintiff as "combative" in connection with her advocacy for client safety, and belittling her intelligence and communication skills, all motivated by animus toward her race and national origin; d. Frequent use of inappropriate and profane language in Plaintiff's presence, including language intended to demean and attack Plaintiff, contributing to an unprofessional and abusive atmosphere; e. Treating Plaintiff as a subordinate and lackey, demeaning her in front of colleagues and excluding her from opportunities for advancement; f. Intimidation and belittlement in meetings convened to address Plaintiff's complaints, including berating Plaintiff about her accent and intelligence; g. Escalation of hostile conduct following Plaintiff's complaints to management and Human Resources, rather than remedial action; h. Threats of unwarranted discipline, demands to sign false disciplinary citations, and pressure to sign releases of potential claims; i. Retaliatory actions, including termination and public statements to other employees attributing Plaintiff's termination to her protected activity.

69.    Defendant's conduct was severe and pervasive, altering the conditions of Plaintiff's employment and creating an abusive and intimidating working environment that interfered with Plaintiff's ability to perform her job duties and caused significant emotional distress.

70.     Defendant failed to take prompt and effective remedial action in response to Plaintiff's complaints of discrimination and hostile work environment, and instead permitted and encouraged the escalation of hostile conduct by management officials and other employees.

71.     The hostile work environment was motivated by discriminatory animus toward Plaintiff's race and national origin, and was sufficiently severe and pervasive to constitute violations of Title VII.

72.     As a direct and proximate result of Defendant's creation and maintenance of a hostile work environment, Plaintiff has suffered and continues to suffer economic loss, emotional distress, reputational harm, and other damages for which Defendant is liable under Title VII.

73.     Plaintiff seeks all available relief, including but not limited to back pay, front pay, compensatory and punitive damages, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## COUNT III.    Retaliation Under Title VII

74.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

75.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a), prohibits employers from retaliating against employees for engaging in protected activity, including making complaints of discrimination and participating in investigations or proceedings related to discrimination.

76.     Plaintiff engaged in protected activity by making multiple complaints to management and Human Resources regarding discriminatory conduct and a hostile work environment, including formal written complaints to HR and verbal reports to supervisors.

77. In response to Plaintiff's protected activity, Defendant, through its officers, directors, agents, and employees, engaged in a pattern of retaliatory conduct, including but not limited to: a. Threatening Plaintiff with termination and demanding that she sign a release of potential claims in early November 2024; b. Subjecting Plaintiff to unwarranted discipline, including pressuring her to sign a false disciplinary citation on December 2, 2024, and threatening suspension; c. Scheduling a "mediation" meeting intended to intimidate and browbeat Plaintiff regarding her complaints, which was only cancelled after intervention by Plaintiff's counsel; d. Terminating Plaintiff's employment on or about December 9, 2024, citing a pretextual reason related to an alleged missed meeting that was, in fact, cancelled; e. Ejecting Plaintiff from the premises and ignoring her assertions that the termination was discriminatory and retaliatory; f. Making statements to other employees that Plaintiff was terminated for "getting lawyers involved," thereby stigmatizing her protected activity; g. Opposing Plaintiff's application for unemployment benefits on fraudulent grounds, which were ultimately rejected by the Pennsylvania Department of Labor & Industry.

78. Defendant's retaliatory conduct was motivated by animus toward Plaintiff's protected activity and was intended to punish Plaintiff for asserting her rights under federal, state, and local anti-discrimination laws.

79. Defendant's actions constitute unlawful retaliation against Plaintiff in violation of Title VII.

80. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer economic loss, emotional distress, reputational harm, and other damages for which Defendant is liable under Title VII.

81. Plaintiff seeks all available relief, including but not limited to back pay,

14

front pay, compensatory and punitive damages, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

### Count IV: <u>Race Discrimination under 42 U.S.C. § 1981</u>

82.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

83.    42 U.S.C. § 1981 guarantees all persons within the jurisdiction of the United States the right to make and enforce contracts, including employment contracts, without respect to race. This statute prohibits employers from discriminating against employees on the basis of race in all aspects of employment, including hiring, promotion, discipline, and termination.

84.    At all relevant times, Defendant Pyramid Healthcare Inc. ("Defendant") was an employer within the meaning of 42 U.S.C. § 1981 and employed Plaintiff, Waseme Gamba, a Black woman, at its facility in Altoona, Pennsylvania.

85.    Throughout her employment, Plaintiff was subjected to persistent and pervasive discriminatory treatment by Defendant and its agents, motivated by her race. This conduct included, but was not limited to:

a. Repeatedly being labeled as "combative" by management, including Lindsey Laudermilch, based on racial stereotypes associated with Black women, particularly in connection with Plaintiff's advocacy for client safety and her professional conduct.

b. Being demeaned and treated as a lackey by supervisors and management, including being excluded from opportunities for advancement and being spoken to in a dismissive and derogatory manner, which was motivated by animus toward Plaintiff's race.

c. Enduring frequent use of inappropriate and profane language in her presence, such as "What the f**k," which was not merely unprofessional but was specifically directed at Plaintiff in a manner intended to belittle and attack her because she is Black.

d. Being belittled and intimidated in meetings convened to address her complaints, including being berated about her intelligence and communication skills by management officials, with such conduct motivated by racial animus.

e. Suffering dismissive and offensive remarks from management, including references to Plaintiff's background and intelligence, which were made in a context that reflected racial bias and a lack of respect for Plaintiff as a Black professional.

86.    Plaintiff made multiple complaints to management and Human Resources regarding the racially discriminatory conduct and hostile work environment. Defendant failed to take any meaningful remedial action, and the discriminatory conduct escalated following Plaintiff's reports.

87.    Defendant's discriminatory conduct was not isolated but constituted a pattern and practice of treating Plaintiff less favorably than similarly situated non-Black employees, including unwarranted discipline, exclusion from decision-making, and ultimately, termination under pretextual circumstances.

88.    The adverse actions taken against Plaintiff—including threats of discipline, demands to sign false disciplinary citations, and termination—were motivated by racial animus and were intended to punish Plaintiff for asserting her rights and for her race.

89.    As a direct and proximate result of Defendant's unlawful race discrimination, Plaintiff has suffered and continues to suffer economic loss, emotional distress, reputational harm, and other damages for which Defendant is liable under 42 U.S.C. § 1981.

90.    Defendant's conduct constitutes a violation of Plaintiff's rights under 42 U.S.C. § 1981 to be free from race-based discrimination in the making and enforcement of employment contracts.

91.    Plaintiff seeks all available relief under 42 U.S.C. § 1981, including but not limited to compensatory and punitive damages, injunctive relief, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

**Count V: <u>Hostile Work Environment Based on Race under 42 U.S.C. § 1981</u>**

92.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

93.     42 U.S.C. § 1981 prohibits employers from subjecting employees to a hostile work environment on the basis of race, including conduct that is severe or pervasive enough to alter the conditions of employment and create an abusive working atmosphere.

94.     At all relevant times, Defendant Pyramid Healthcare Inc. ("Defendant"), through its officers, directors, agents, and employees, created and maintained a hostile work environment for Plaintiff, Waseme Gamba, a Black woman, based on her race.

95.     The racially hostile work environment to which Plaintiff was subjected included, but was not limited to, the following:

a. Repeatedly being labeled as "combative" by management, including Lindsey Laudermilch, in a manner reflecting racial stereotypes associated with Black women, particularly when Plaintiff advocated for client safety or expressed professional opinions.

b. Being demeaned and treated as a lackey by supervisors and management, including exclusion from opportunities for advancement and being spoken to in a dismissive and derogatory manner, motivated by racial animus.

c. Enduring frequent use of inappropriate and profane language in her presence, such as "What the f\*\*k," which was directed at Plaintiff in a manner intended to belittle and attack her because she is Black.

d. Being belittled and intimidated in meetings convened to address her complaints, including being berated about her intelligence and communication skills by management officials, with such conduct motivated by racial bias.

e. Suffering dismissive and offensive remarks from management, including references to Plaintiff's background and intelligence, which were made in a context that reflected racial bias and a lack of respect for Plaintiff as a Black professional.

f. Management's failure to take any meaningful remedial action in response to Plaintiff's complaints of racially discriminatory conduct, and instead permitting and encouraging the escalation of hostile conduct by management officials and other employees.

g. Escalation of hostile conduct following Plaintiff's complaints to management and Human Resources, including threats of unwarranted discipline, demands to sign false disciplinary citations, and pressure to sign releases of potential claims, all motivated by racial animus.

h. Retaliatory actions, including termination and public statements to other employees attributing Plaintiff's termination to her protected activity, further contributing to the hostile environment.

96.    The conduct described above was severe and pervasive, altering the conditions of Plaintiff's employment and creating an abusive and intimidating working environment that interfered with Plaintiff's ability to perform her job duties and caused significant emotional distress.

97.    Defendant's actions and omissions were motivated by discriminatory animus toward Plaintiff's race and were sufficiently severe and pervasive to constitute violations of 42 U.S.C. § 1981.

98.    As a direct and proximate result of Defendant's creation and maintenance of a racially hostile work environment, Plaintiff has suffered and continues to suffer economic loss, emotional distress, reputational harm, and other damages for which Defendant is liable under 42 U.S.C. § 1981.

99.    Plaintiff seeks all available relief under 42 U.S.C. § 1981, including but not limited to compensatory and punitive damages, injunctive relief, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

**Count VI: <u>Retaliation for Race Discrimination under 42 U.S.C. § 1981</u>**

100.    Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

18

101.    42 U.S.C. § 1981 prohibits employers from retaliating against employees who engage in protected activity related to race discrimination, including making complaints about racially discriminatory conduct, participating in investigations, or otherwise asserting their rights to be free from race-based discrimination in the making and enforcement of employment contracts.

102.    Plaintiff, Waseme Gamba, a Black woman, engaged in protected activity under § 1981 by repeatedly making complaints to management and Human Resources regarding racially discriminatory conduct and a racially hostile work environment. Plaintiff's protected activity included, but was not limited to:

a. Verbal and written complaints to supervisors and management, including Aleisha Albertson (Director of Operations) and Kimberlee Matthews (HR Department), specifically addressing racially discriminatory treatment and hostile work environment;

b. Lodging a formal written complaint with HR on July 9, 2024, detailing the race-based discrimination and hostile work environment perpetrated by management, including Lindsey Laudermilch;

c. Engaging legal counsel to address ongoing race discrimination and retaliation, and having her attorney send a cease-and-desist letter to Defendant's HR department on November 17, 2024, outlining the racially discriminatory conduct and requesting that all further communications regarding her complaints be directed to counsel.

103.    In direct response to Plaintiff's protected activity, Defendant, through its officers, directors, agents, and employees, engaged in a pattern of retaliatory conduct, including but not limited to:

a. Threatening Plaintiff with unwarranted discipline and demanding that she sign a release of potential claims in early November 2024, after she continued to complain about race discrimination;

b. Pressuring Plaintiff to sign a false disciplinary citation and threatening suspension on December 2, 2024, in retaliation for her protected complaints and refusal to acquiesce to discriminatory treatment;

19

c. Scheduling a "mediation" meeting on December 6, 2024, with the intent to intimidate and browbeat Plaintiff regarding her race discrimination complaints, which was only cancelled after intervention by Plaintiff's counsel;

d. Terminating Plaintiff's employment on December 9, 2024, under pretextual circumstances, shortly after her protected complaints and legal representation, and without affording her an opportunity to contest the stated reason for termination;

e. Ejecting Plaintiff from the premises immediately following her termination, despite her assertions that the termination was discriminatory and retaliatory;

f. Making adverse statements to other employees, including informing them that Plaintiff was terminated for "getting lawyers involved," thereby stigmatizing her protected activity and deterring others from asserting their rights;

g. Opposing Plaintiff's application for unemployment benefits on false grounds of misconduct, which was ultimately rejected by the Pennsylvania Department of Labor & Industry, further evidencing retaliatory animus.

104.   Defendant's retaliatory conduct was motivated by animus toward Plaintiff's protected activity in opposing race discrimination and was intended to punish Plaintiff for asserting her rights under federal law.

105.   There is a direct and proximate causal connection between Plaintiff's protected activity and the adverse actions taken by Defendant, as evidenced by the temporal proximity, the escalation of hostile conduct following Plaintiff's complaints, and the explicit statements made by management regarding the reason for her termination.

106.   As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer economic loss, emotional distress, reputational harm, and other damages for which Defendant is liable under 42 U.S.C. § 1981.

107.   Defendant's conduct constitutes a violation of Plaintiff's rights under 42 U.S.C. § 1981 to be free from retaliation for engaging in protected activity related to race discrimination.

108.    Plaintiff seeks all available relief under 42 U.S.C. § 1981, including but not limited to compensatory and punitive damages, injunctive relief, attorneys' fees, costs, and such other and further relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and award the following relief:

a.  Compensatory damages in an amount to be determined at trial for economic harm (including back and front wages), emotional distress damages, pain and suffering damages  and reputational harm;

b.  Punitive damages as permitted by law;

c.  Injunctive relief requiring Defendant to take appropriate remedial action to prevent further discrimination, harassment, and retaliation;

d.  Reasonable attorneys' fees and costs pursuant to applicable statutes;

e.  Pre- and post-judgement interest as allowed by law;

f.  Any other relief the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury

Dated:          September 11, 2025
                Huntington, NY

                                Respectfully Submitted,
                                **TA LEGAL GROUP PLLC**


                     By:    _____

                            Taimur Alamgir, Esq.
                            205 E. Main Street, Ste 3-2
                            Huntington, NY 11743
                            Tel. (914) 552-2669
                            tim@talegalgroup.com

22